**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **LESTER DOBBEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 07-818-GPM** |
| | ) | |
| **ILLINOIS  DEPARTMENT  OF** | ) | |
| **CORRECTIONS,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Lester Dobbey filed this action under 42 U.S.C. § 1983, alleging that he suffered violations of his constitutional rights while he was incarcerated at Menard Correctional Center (Menard).  Specifically, Dobbey claims that Defendants Tyone Murray, a grievance officer at Menard, and Donald A. Hulick, Chief Administrative Officer (i.e., warden) at Menard, retaliated against him for filing grievances regarding staff conduct that occurred at Menard.[1]

Defendants filed a motion for summary judgment on the merits of Dobbey's claims and also on the basis that they are entitled to qualified immunity.   The Court heard oral argument on the motion on February 7, 2011.[2]   For the following reasons and for those discussed on the record during the hearing, the motion for summary judgment is granted, and this action is dismissed.

### FACTUAL BACKGROUND

On January 24, 2007, Dobbey was working at his prison janitorial job when he and three

---

[1] Only Tyone Murray and Donald A. Hulick remain as defendants in this action.

[2] Counsel appeared at the hearing on Plaintiff's behalf.

other inmates witnessed a correctional officer hang a noose from the ceiling of the control room at Menard. Dobbey prepared an emergency grievance regarding the incident and submitted it to Warden Hulick for review that same day. In the emergency grievance, Dobbey stated, among other things: "I request for a thorough investigation and that which is deemed appropriate and necessary to ensure my [safety] and security from any Menard correctional staff." (*See* Doc. 76-2). On January 29, 2007, Defendant Hulick declined to expedite the emergency grievance, finding that it was not an emergency and directing Dobbey to submit the grievance in the normal manner. Above Hulick's signature is a handwritten note: "Issue already referred for investigation" (*id.*). Grievance Officer Murray returned the emergency grievance to Dobbey on January 31, 2007, and instructed him that his grievance was deemed a non-emergency by the Chief Administrative Officer, Warden Hulick, and that he should follow the proper grievance procedures for filing a non-emergency grievance.[3]

On February 20, 2007, Dobbey was issued a disciplinary ticket by correctional officer Kenneth Huff for allegedly disobeying a direct order that he scrape wax off of a section of the floor in the prison. Dobbey filed an emergency grievance regarding the disciplinary report, alleging that he was issued a false disciplinary ticket in retaliation for filing the original grievance regarding staff conduct.[4] On February 23, 2007, Warden Hulick determined that Dobbey's grievance did not constitute an emergency and directed him to follow the normal grievance procedure. (*See* Doc. 76-2). On February 26, 2007, Grievance Officer Murray returned the emergency grievance to Dobbey and instructed him that his grievance was deemed a non-emergency by the Chief

---

[3] There is no contention that Dobbey failed to properly exhaust his administrative remedies.

[4] Dobbey also filed a retaliation claim against correctional officer Kenneth Huff. That claim was severed from this action because Huff was on active military duty and remains pending in civil case number 10-233-GPM.

Administrative Officer, Warden Hulick, and that he should follow the proper grievance procedures for filing a non-emergency grievance (*id.*).

On March 1, 2007, Dobbey went before the Adjustment Committee for a hearing on the disciplinary ticket.   The Adjustment Committee found Dobbey guilty of the offense of disobeying a direct order and recommended discipline of 1-month C grade, an assignment change, and 1-month commissary restriction.   On March 2, 2007, the Chief Administrative Officer, Warden Hulick, concurred with the Adjustment Committee's recommendation.   (*See generally* Doc. 75-2, p. 15).

Dobbey alleges that Warden Hulick retaliated against him by declining to treat his grievances as emergencies, by failing to conduct a proper investigation, and by condoning punishment for the false disciplinary report that was issued in retaliation for Dobbey filing the original grievance related to the noose.   He contends that Grievance Officer Murray retaliated against him by failing to investigate and/or prevent the retaliation.

## DISCUSSION

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).   Any discrepancies in the factual record should be evaluated in the nonmovant's favor.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   The party moving for summary judgment must show the lack of a genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   *Anderson*, 477 U.S. at 248.

"The doctrine of respondeat superior does not apply to § 1983 actions; thus to be held

individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001), *quoting Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).   A defendant is personally responsible "if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Chavez*, 251 F.3d at 652. Thus, liability can attach without the defendant directly participating in the constitutional deprivation. *Sanville*, 266 F.3d at 740.   Supervisory liability may be found, however, only where the supervisor, "with knowledge of the subordinate's conduct, approves of the conduct and the basis for it."   *Chavez*, 251 F.3d at 651.   "Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable. … The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."   *Id.*, *quoting Jones v. City of Chicago*, 856 F.2d 985, 992-993 (7th Cir. 1988).

### Dobbey's Claim against Defendant Murray

Dobbey argues that Murray failed to properly investigate the February 20, 2007, grievance regarding the disciplinary report, effectively retaliating against him by permitting and enforcing retaliatory discipline.   But Murray's conduct, which simply involved processing the administrative grievance, is insufficient to create liability for the alleged constitutional violation. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (a defendant "who rejects an administrative complaint about a completed act of misconduct" does not violate the Constitution).   As a grievance officer, Murray was involved in the alleged deprivation only through the grievance process.   Under Illinois regulations, the Chief Administrative Officer determines whether a grievance constitutes an emergency by considering whether the offender faces a substantial risk of imminent personal injury or other serious harm.   Ill. Admin. Code tit. 20 § 504.840.   It is well

established in the Seventh Circuit that liability for a constitutional violation does not attach to defendants who acted only to process administrative grievances.

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way.   Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job.   The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen.   [The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care.   That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.   That is equally true for an inmate complaint examiner.

*See, e.g., Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (internal citations omitted). Consequently, Dobbey's claim against Defendant Murray fails.

**Dobbey's Claim against Defendant Hulick**

Dobbey claims that Warden Hulick improperly declined to treat his grievances as emergencies, failed to conduct a proper investigation, and condoned punishment for the false disciplinary report by concurring with the recommended discipline.   It became clear during the February 7th hearing that Dobbey's argument that Warden Hulick denied Dobbey's emergency grievances as non-emergencies in retaliation for Dobbey's initial grievance regarding staff conduct is nonsensical; in determining that they were not emergencies, Warden Hulick instructed Dobbey to submit his grievances using the normal grievance procedures.   In other words, Hulick did not retaliate against Dobbey for filing a grievance when he encouraged Dobbey to file additional grievances.

Dobbey's claim against Hulick for failing to conduct a proper investigation fails for the

same reason that it fails against Defendant Murray.   As the Chief Administrative Officer, Warden Hulick declined to treat the emergency grievances as emergencies.   He even noted on the response that the basis of the initial grievance already was referred for investigation (*see* Doc. 76-2).   As stated by the Court of Appeals, he did not "have a free-floating obligation to put things to rights," *Burks*, 555 F.3d at 595; rather, he performed his duty to pass on the emergency grievances.   This conduct does not create liability for a constitutional violation.   *See George*, 507 F.3d at 609 ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").

Finally, Dobbey challenges Hulick's personal involvement in concurring in the discipline imposed for refusing to obey a direct order, which Dobbey claims was a false charge, as retaliatory.   Dobbey has submitted no evidence, however, that Hulick concurred in the recommended discipline for the purpose of retaliating against Dobbey.   In fact, the record contains no evidence of the extent of Hulick's involvement in the disciplinary hearing; it appears that he merely concurred in the recommended discipline based upon his review of the report.   The Court cannot impute retaliatory motive to Hulick without any evidence from Dobbey that Hulick concurred with the report in retaliation for the initial grievance.   Consequently, Dobbey's retaliation claim against Hulick for any involvement in the discipline imposed against Dobbey fails.

**Qualified Immunity**

The doctrine of qualified immunity protects government or public officials from liability for damages if their actions did not violate clearly established rights of which a reasonable person would have known.   *Catlin v. City of Wheaton*, 574 F.3d 361, 365 (7th Cir. 2009).   "The purpose of the doctrine is 'to shield officials from harassment, distraction, and liability when they perform

their duties reasonably.'" *Id.*, *quoting Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).   To overcome qualified immunity, a plaintiff must show that:   (1) the facts make out a violation of the plaintiff's constitutional rights and (2) the constitutional right at issue was clearly established at the time of the alleged violation.   *Catlin*, 574 F.3d at 365, *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001).   Courts are permitted to exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first, in light of the circumstances presented by the particular case.   *Pearson*, 129 S. Ct. at 818.   "When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009).

Where, as here, the Court finds that no constitutional violation has occurred, it is unnecessary to consider whether the defendants are entitled to qualified immunity.   *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997).   Therefore, the Court declines to reach Defendants' qualified immunity argument.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. 75) is **GRANTED**.   No claims remain pending in this action.   Therefore, the action is **DISMISSED**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:   02/17/11

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge